475 P.2d 277

**The STATE of Arizona, Appellee,**

v.

**Edward GREGGE, Appellant.**

**No. 1 CA–CR 174.**

Court of Appeals of Arizona, Division 1.

Oct. 15, 1970.

Rehearing Denied Nov. 19, 1970.
Review Denied Jan. 12, 1971.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender, by Bedford Douglass and Anne Kappes, Deputy Public Defenders, Phoenix, for appellant.

KRUCKER, Judge.

Defendant, Edward Gregge, was tried and convicted of the crime of perjury. A judgment of guilty was entered, and defendant was sentenced to not less than two nor more than three years.

Construing the facts in a light most favorable to sustaining the trial court, they are as follows. At the trial of one Derewood Bible, Gregge testified he had gone hunting with a friend named Travis on

April 16, 1966, in Black Canyon near Phoenix, Arizona. There he had seen Mr. Bible and a woman some time after 2:00 p. m.

Defendant was subsequently tried for perjury, which is the subject of this appeal. A Mr. Vohwinkel testified that on April 16, 1966, Gregge had been working for him at a service station in Las Vegas. He produced time cards for that entire week showing defendant had worked from 2:00 p. m. to midnight. A Travis Chambers testified denying any such hunting venture and claimed Bible had attempted to bribe him at a bar one night to help him escape a "bum" rape charge.

The jury was unable to reach a verdict and the case was retried.

At the second trial, Mr. Chambers testified he and defendant had met Mr. Bible for the first time in a bar. Mr. Bible had offered to pay Chambers to lie so he could escape being "railroaded." Mr. Chambers also testified that he had never gone hunting with defendant in Black Canyon. Defendant testified he and a Steve O'Brien (who did not appear) had gone to Phoenix from Las Vegas on April 15th. He had visited some friends, then went to Black Canyon with Travis. There he had seen Bible and the woman through binoculars. Later that day he assisted a friend deliver some sheetrock. Later in June, defendant happened to actually encounter Mr. Bible in Black Canyon. As a consequence of this conversation, defendant agreed to testify.

The jury, on this evidence, found defendant guilty.

Defendant now appeals, raising the following issues:

1. Refusal of the court to provide indigent defendant with transcript of first trial was error.

2. Admitting Chambers' testimony about Bible's offer of bribe to him was error.

3. The State's closing argument, in commenting on matters not in evidence, was error.

4. The State's references in closing argument to failure of defendant to call witnesses was error.

5. The court's allowance of conflicting instructions on standard of proof was error.

6. Disallowing admittance of sales slip from Thrift Lumber Supply Company by court was error.

We take them in order.

First, defendant contends as an indigent he was unconstitutionally denied a free transcript of his first perjury trial. In particular, he requested Willie Chambers' testimony. The Court's February 1, 1968 minute entry denying defendant's motions for a transcript reads as follows:

"The Public Defenders Office is provided a budget by the Board of Supervisors of the County, and, therefore, the defendant is not without funds with which to provide a transcript since public funds are provided the Office of the Public Defender."

In State v. Casey, 10 Ariz.App. 516, 460 P.2d 52 (1969), this court reiterated the rule that the State is not mandated by constitutional provisions to provide a "full paraphernalia of defense." State v. Bowen, 104 Ariz. 138, 449 P.2d 603 (1969); State v. Chambers, 104 Ariz. 247, 451 P.2d 27 (1969).

█ We also held that in order for defendant to obtain a transcript, he must make a specific and clear request for a transcript of a *named* witness's testimony. *Casey,* supra. A general request for the entire transcript fails to show need. Austin v. State, 451 S.W.2d 491 (Tex.Cr.App.1970). Other courts have required a showing of prejudice when defendant later contends he was unconstitutionally denied a transcript. United States v. Carella, 411 F.2d 729 (2d Cir. 1969) (a transcript of chief prosecution witness is enough); State v. Keel, 5 N.C.App. 330, 168 S.E.2d 465 (1969) (no prejudice when same attorney tried both cases); State v. Schneidewind, 47 Wis.2d 110, 176 N.W.2d 303 (1970) (access to

copies available); State v. Green, 55 N.J. 13, 258 A.2d 889 (1969) (record failed to show material discrepancies in testimony beyond those already elicited); Little v. Turner, 402 F.2d 495 (10th Cir. 1968) (prejudice shown when chief witness lost his notes and could not remember facts and transcript held sole information on hearing).

In the instant case, defendant did specifically request Willie Chambers' testimony. However, we do believe the trial court's denial of the request based on the defendant's representation by a public defender and his access to funds amounted to a court determination, not that defendant should not have a transcript, but that he showed no need in having it supplied as requested. If indeed the public defender's office has no transcript funds for defendant, which is not evident by the record as it now stands, the matter should have been resubmitted to the trial court. At this point, the record and decision of the trial court imports verity, and the defendant did not produce counter evidence.

Defendant contends it was prejudicial error for the trial court to admit Mr. Chambers' testimony that Bible had attempted to bribe him. In particular, he contends it is hearsay, irrelevant, and improperly implies that since Bible tried to bribe Chambers, he might have bribed defendant Gregge.

The testimony elicited and admitted by the court was that Bible offered Chambers $10,000 to commit perjury at his trial. On cross-examination, defense counsel asked Mr. Chambers whether Mr. Gregge, to his knowledge, also had heard the bribe offer. He said, "I think so." There was also evidence that defendant and Bible played pool together and were seen talking together on the evening Bible offered him the bribe and that they had left the bar together. Mr. Chambers also testified he told defendant of the bribe.

We believe that the evidence in this case was admissible to prove defendant's motive. In 2 Wigmore, § 392, it is stated that "pecuniary circumstances may properly be admitted as evidencing a motive for some one's action." The treatise cites United States v. Quaker Industrial Alcohol Corporation, 2 F.Supp. 863 (E.D.Pa.1932), in which the court approved admission of evidence showing that the business operation under investigation in question was so profitable that the employees might have been bribed. No specific proof of the bribes was introduced. We believe that here, the evidence was illuminating as to defendant's motive, if believed. It was especially relevant when defendant admitted he had knowledge of the offer to Chambers.

Next, defendant argues that the prosecution's closing argument improperly referred to matters not in evidence. In particular, he contends the prosecution inflamed the jury by referring to Bible's conviction of molesting a 13-year-old girl, and the Bible jury's disbelief of defendant Gregge as to the same story he is here accused of fabricating.

Initially we point out that evidence tending to show the circumstances and defense of the trial during which the perjury was committed is admissible evidence bearing on the materiality of the testimony alleged to be false. 41 Am.Jur. Perjury § 60. In this case, questioning of defendant and Willie Chambers revealed that the Bible trial revolved around the rape of a 13-year-old girl in the desert. Defendant never objected to these references nor to the closing argument of the prosecution. We therefore find no substance to this objection of defendant.

Next, defendant contends the State's reference, in its closing argument, to defendant's failure to produce certain alibi and character witnesses was prejudicial error. We again point out that defendant's failure to object below curtails review here, unless the conduct complained of was so flagrant as to deny defendant a fair trial. This is true even if he complained at the motion for a new trial, which does not appear in the record here. Kelch

v. Courson, 103 Ariz. 576, 447 P.2d 550 (1968).

We cannot believe that any references made by the State as to uncalled alibi witnesses did any more than reiterate what cross-examination of defendant had already revealed. Essential witnesses to defendant's version of the facts were conspicuously absent or unknown to those people who knew defendant well. This was precisely decided in State v. Hatten (filed September 29, 1970). As to the comment on character witnesses, in the State's rebuttal argument, we do not believe it was prejudicial as in State v. Sorensen, 104 Ariz. 503, 455 P.2d 981 (1969). No objection was made here that was overruled by the court, and thus given added weight. Nor was the case simply tried on defendant's word versus physical facts. Here the State produced its own witnesses to challenge defendant's word.

 Next, defendant contends that the court gave an erroneous, non-standard instruction on the standard of proof. The challenged instruction is as follows:

> " * * * there is nothing peculiarly different in the way a jury is to consider the proof in a criminal case from that in which any reasonable person treats an important question whose solution depends upon the consideration of evidence. *You are expected to use your good sense.* Consider the evidence only for the purposes for which it's been admitted, and then resolve it according to deliberate and cautious judgment, keeping constantly in mind that you are not partisans and you are not advocates. You are judges, judges of the facts, and your duty is to ascertain the truth from the evidence in the case."

In particular, defendant argues that it conflicts with the traditional reasonable doubt standard which he maintains is not based on good sense.

We cannot imagine that the above instruction in any way deviates from the basic requirements of criminal law. It is a general statement and to suggest jurors should not use good sense in evaluating evidence and reasonable doubt is ridiculous.

 Lastly, defendant contends the trial court erred in refusing to admit a sales slip which showed sheetrock was sold on the day in question. Defendant has testified he made such a purchase that day. The slip, however, did not name the purchaser.

The trial court extensively inquired into the background of the sales slip, trying to ascertain the connection it had to defendant. The sales clerk could only identify it as having his writing on it. He had no independent recollection of the date of the sale or the purchaser. We therefore believe the trial court did not abuse its discretion in refusing its admission.

Judgment affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.

*Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.*