507 P.2d 978

James W. GOLDTHORPE, Appellant,

v.

FARMERS INSURANCE EXCHANGE,
a corporation, Appellee.

No. 2 CA–CIV 1258.

Court of Appeals of Arizona,
Division 2.

March 28, 1973.

Mesch, Marquez & Rothschild, P. C. by Douglas H. Clark, Jr., Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, by D. B. Udall, Tucson, for appellee.

HOWARD, Judge.

Appellant-plaintiff, James W. Goldthorpe, was insured by the appellee against loss to personal property due to burglary, theft and larceny. On August 1, 1970, appellant notified the Tucson Police Department that his home had been burglarized and some guns were taken. The appellee was notified of this loss but refused to make any payments under its policy. Appellant then filed suit against appellee alleging breach of the insurance contract. In its answer appellee denied that a burglary, theft or larceny had taken place and further alleged that appellant had failed to comply with the policy provisions pertaining to proof of loss.

In addition to damages and other issues which are not pertinent to this opinion, the

primary issue framed by the pretrial order entered by the trial court was whether appellant had complied with the provisions of the insurance policy.

Based on this pretrial order appellant moved for summary judgment as to liability on the theory that appellee had abandoned its defense that there had not been a burglary.

Appellee opposed the motion for summary judgment contending that the pretrial order was inartfully worded, and that it never had abandoned its defense that a burglary had not been committed. Appellee moved to amend the pretrial order to include that defense. Appellant's motion for summary judgment was denied, but there was no ruling on appellee's motion to amend the pretrial order.

Appellant then filed supplemental interrogatories relative to appellee's defense of no burglary and appellee answered the same.

The case was tried to a jury. At the close of his case and again at the close of appellee's case, appellant moved for a directed verdict claiming he had shown that he had complied with all the provisions of the insurance policy. These motions were denied. The case was submitted to the jury which found in favor of the appellee.

Appellant made a motion for a new trial which was denied and now appeals from the denial of the motion for new trial and from the judgment entered on the jury's verdict.

Appellant presents the following questions for review:

"1. Did the court err in admitting over objection, evidence that appellant refused to take a lie detector examination?

2. Did the court err in not directing a verdict for appellant?"

### THE LIE DETECTOR TEST

■ In the absence of a stipulation, evidence of or reference to a polygraph test is inadmissible. State v. Tosatto, 107 Ariz. 231, 485 P.2d 556 (1971); State v. Forgan, 104 Ariz. 497, 455 P.2d 975 (1969); State v. Chambers, 104 Ariz. 247, 451 P.2d 27 (1969); State v. Bowen, 104 Ariz. 138, 449 P.2d 603 (1969); State v. Valdez, 91 Ariz. 274, 371 P.2d 894 (1962).

The first witness called by appellant was Michael Walsh, a police officer with the burglary detail of the City of Tucson Police Department. On cross-examination he testified:

"Q. Have you ever had another case where there has been stolen guns, a nighttime burglary where there was no rumble about what became of it anyway?

A. No, never.

Q. Did you have any other conversation with Mr. Goldthorpe about investigation pertaining to this case?

A. I asked him if he would submit to a polygraph examination.

Q. What is a polygraph examination?

A. It is a lie detector test.

Q. Who gives that in this area?

A. Police officers.

Q. Is there—are there police officers or is there a police officer who is qualified to give that test in this area?

BY MR. CLARK: I don't believe this really has any pertinency or any materiality.

BY COURT: No, objection overrules. [sic] You may answer it.

A. Yes, Sergeant Bob Henry and Detective Douglas Dupmeyer (phonetic).

Q. What was Mr. Goldthorpe's response to that question?

A. He declined."

On re-direct examination by appellant Officer Walsh testified:

"Q. Officer, you said that you asked Mr. Goldthorpe to take a polygraph examination. I [sic] that correct?

A. Yes.

Q. And do you remember why he told you that he wouldn't?

A. When I suggested it to him at his residence he indicated that he would, however, prior to doing so, would like to talk to counsel. I told him that would be fine by me and after conferring with his counsel he told me counsel advised him against taking the polygraph.

Q. Do you know when you had this conversation?

A. I believe it was on the 5th?

Q. Do you know if—did he indicate to you or did you find out that Mr. Goldthorpe would have been perfectly willing, perfectly ready, willing and able to take the polygraph test if Farmer's Insurance Company would pay for his loss if he passed it. Did you come into that information?

A. I heard his attorney propose that.

Q. And to your knowledge, that is still the state of affairs, isn't that correct?

A. As far as the attorney was concerned.

Q. As far as Mr. Goldthorpe is concerned?

A. I don't know. I didn't ask him."

The initial response by the officer concerning the polygraph test was not objected to nor was a motion made to strike his answer. The subsequent objection relating to whether there were qualified police officers in the area to give the test did not challenge the previous testimony but related to the preceding question only. When the crucial question was asked concerning appellant's willingness to take the polygraph test, no objection was interposed. It was incumbent upon him to do so at that point. Zakroff v. May, 8 Ariz.App. 101, 443 P.2d 916 (1968); Simpson v. Heiderich, 4 Ariz.App. 232, 419 P.2d 362 (1966). The testimony of which appellant complains was properly before the jury since he neither objected to its admission nor moved to strike it as soon as the ground for objection appeared. Central Copper Company v. Klefisch, 34 Ariz. 230, 270 P. 629 (1928). At oral argument counsel for appellant stated that he did not object and move to strike because he did not want to draw undue attention to the testimony. Yet he did so on re-direct examination. Having made a tactical decision, appellant will have to live with it and cannot use it as an excuse for failure to object. *Cf.* Nagle v. Conger, 10 Ariz.App. 91, 456 P.2d 411 (1969).

## FAILURE TO DIRECT A VERDICT

Although the trial court did not amend the pretrial order upon denying appellant's motion for summary judgment, it is clear that appellant was not surprised at the time of trial and had in fact submitted supplemental interrogatories in order to be prepared at the time of trial to meet appellee's defense. Furthermore, no objection was ever asserted at trial to any cross-examination questions relating to this defense that no burglary had in fact taken place. Evidence on that issue was brought before the jury without any objections on appellant's part.

The trial court did not err in refusing to grant appellant's motion for a directed verdict.

Affirmed.

HATHAWAY, C. J., concurring.

KRUCKER, Judge (dissenting).

I must dissent. I agree with the opinion of my colleagues with the exception of that portion dealing with polygraph tests. The majority opinion, as written, does somewhat emphasize that there was a question of failure by appellant to comply with the policy procedures pertaining to proof of loss. However, both sides concede that there was no failure to comply with the policy procedures pertaining to proof of loss.

I strongly feel that all of the testimony concerning the polygraph tests was inadmissible and highly prejudicial, particularly when no test was given and appellee obtained an answer before the jury that appellant had refused to take the test.

**369**

It is true, and everyone agrees, that evidence or reference to a polygraph test is inadmissible, except by stipulation, and the cases cited in the majority opinion sustain this position.[1] The majority opinion turns on the question of waiver by not properly objecting, but it is clear from the quoted testimony in the majority opinion that the objection was overruled. I concede, as stated in State v. Bowen, 104 Ariz. 138, 449 P.2d 603 (1969), that the case was allowed to go to the jury after reference to a polygraph test. However, in *Bowen* it was clearly stated that reference to a polygraph test is inadmissible for any reason, and the court instructed the jury to disregard such testimony and struck it from the record.

It is difficult for me to see how a motion to strike the testimony from the record or disregard the testimony could be made when the objection to the testimony was overruled.

In the case before us, the majority places great emphasis on the manner in which the objection was made. I agree that counsel's objection was not very strong, but the objection was made and overruled and counsel could not ask that the testimony be stricken. All of the testimony concerning the polygraph test was brought out by the attorney for the appellee. After the testimony was in and the objection to it had been overruled, the damaging testimony was elicited by appellee's counsel. Appellant's counsel, on redirect examination, attempted to explain the testimony that had already been received, but, as he stated in oral argument to this court, he did not want to overemphasize this aspect of the case before the jury.

The sole basis of the majority opinion on this point turns on whether or not the objections were properly or timely made. As noted in Udall, Arizona Law of Evidence § 12, specific objections must be made and the court cannot err by overruling such objections unless the evidence is, on its face, *specifically inadmissible for any purpose.* I think it is the rule that the admission of prejudicial evidence must result in reversal although no proper objection is made. I further believe that the objection made by counsel, that the evidence (referring to the polygraph test) had no pertinency or materiality, was sufficient, particularly in view of the fact that all such evidence, in the absence of stipulation, was immaterial for any purpose. Any objection going to such testimony should be ample. As Mr. Udall further states:

"Where an objection to a certain class of evidence is distinctly made and overruled, counsel need not risk the displeasure of the court and juries by repeated objections to the same class of evidence." Udall, Arizona Law of Evidence § 12 at 28.

I would reverse the judgment and remand the cause for a new trial.

---

1. I do not contend that testimony regarding a polygraph test is fundamental error because our Supreme Court has held that it is admissible by stipulation and fundamental error cannot be stipulated to.